```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------
SUBWAY INTERNATIONAL, B.V.,

     Petitioner and Cross-            21-cv-7362 (JSR)
     Respondent,
                                      MEMORANDUM ORDER
     -v-

SUBWAY RUSSIA FRANCHISING
COMPANY, LLC,

     Respondent and Cross-
     Petitioner.
------------------------------
```

JED S. RAKOFF, U.S.D.J.:

Before the Court are cross-petitions to confirm and vacate an arbitration award. The underlying dispute concerns control over the network of Subway sandwich shops in Russia. Despite the highly deferential standard of review under the Federal Arbitration Act, the Court concludes that the arbitration award must be vacated, because "a mutual, final, and definite award upon the subject matter submitted [to arbitration] was not made." 9 U.S.C. § 10(a)(4). Specifically, the Final Award, issued following what were essentially cross-motions for partial summary judgment, purported to render decision on <u>all</u> the claims and counterclaims, even though the supporting opinion acknowledged that one claim pled in the alternative was reserved for trial and the arbitrator therefore did not address it. Full resolution of the case was therefore inappropriate, and it is necessary to remand the case to decide the remaining claim.

1

I.  **Factual Background**

Subway Russia Franchising Company, LLC ("Subway Russia") has been the exclusive developer of the Subway restaurant chain in Russia since 1993 through a series of three Master Franchise Agreements ("MFAs") signed with Subway International B.V. ("SIBV"), the fast food chain's international franchisor. The parties' predecessors in interest had begun their relationship in 1993 by concluding an MFA with a 20-year term. ECF 1, ("Pet.") ¶¶ 2, 7 n. 1; ECF 14 ("Cross-Pet.") ¶ 14. The 1993 MFA provided Subway Russia with an unlimited number of two-year renewals on the same terms. Cross Pet. ¶ 18.

As was common in Subway's international MFAs, the 1993 MFA also included a "Development Schedule," which required Subway Russia to have a specific number of restaurants open at the end of each year from 1994-2001 (e.g., 110 Russian restaurants at the end of 2000), and a so-called "McDonald's Clause." Cross Pet. ¶ 19. The McDonald's Clause "required Subway Russia to have at least as many restaurants in Russia as the fast-food chain with the most restaurants in Russia." Id.

The 1993 MFA was subsequently amended in 2000, after SIBV had issued Subway Russia a notice of default and attempted to terminate the MFA. Cross. Pet. ¶ 24.  At the time, the Development Schedule required Subway Russia to have 110 Russia restaurants; it had only 5. Cross Pet. ¶ 25. However, the notice of default did not rely on the unmet development schedule as grounds for termination, but rather focused exclusively on financial defaults. Cross Pet. ¶ 26. The 2000 Amendment imposed a new development schedule, also including a

2

McDonald's Clause. Cross Pet. ¶ 27. It also added a new provision requiring minimum average gross sales per restaurant per week ("AUV Clause"), denominated in U.S. dollars. Cross Pet. ¶ 28.

The parties renewed the 1993 MFA on July 25, 2013 ("2013 First Renewal"). Pet. ¶ 7. The 2013 First Renewal included a mandatory arbitration provision specifying that any dispute arising out of the or related to the MFA would be arbitrated pursuant to American Arbitration Association ("AAA") rules and any hearing would occur in New York. Id. See also ECF 1-1 § 23A.1. There were extensive negotiations, with SIBV asserting Subway Russia's breach of seven provisions of the amended MFA. Cross Pet. ¶ 35. The 2013 First Renewal reiterated Subway Russia's unlimited right to 2-year renewals, provided that it was not in default on any terms of the MFA. Cross Pet. ¶ 36. The 2013 First Renewal also restated the McDonald's Clause and raised the AUV Clause's threshold. Cross Pet. ¶ 37. In October 2015, the parties again renewed the MFA, but this time for a 5-year term. ("2015 Second Renewal").

Subway Russia failed to comply with the McDonald's and AUV Clauses for most of its history. At no time between 1993 and 2010 was Subway Russia in compliance with the applicable Development Schedule or McDonald's Clause. Cross Pet. ¶ 30. For example, the 2000 Amendment required 160 restaurants operating by the end of 2005; Subway Russia

3

had 19. Id. But SIBV never alleged a default on this basis.[1] After growth from 2010-2013, Subway Russia avers that it fortunes soured along with the Russian economy starting in 2014, after Russia launched a war of aggression in Crimea and the United States imposed retaliatory economic sanctions. Other factors, including the collapse in value of the ruble and public health measures imposed to control the COVID-19 pandemic, further hurt Subway Russia's performance through 2020. Cross Pet. ¶¶ 39-45. As a result, Subway Russia's per-restaurant sales fell below the AUV Clause's threshold in October 2014, and revenues never subsequently exceeded the AUV Clause's threshold. Cross Pet. ¶ 49. Subway Russia's store count also declined for the first time in 2014, a decline which continued through 2021. Cross Pet. ¶ 52. At some point during this time, Subway Russia breached the McDonald's Clause and remained in breach. Id.

The instant dispute arose from the parties' negotiation of a third renewal of the MFA on new terms, before the 2015 Second Renewal expired in October 2020. Negotiations began in March 2019 and continued remotely and in two meetings held in March and August 2019. Cross Pet. ¶ 80. The parties exchanged written proposals after the August 2019 meeting. See ECF 14-18. On November 25, 2019, Subway Russia sent SIBV a letter with a renewal offer, setting forth the key disputed terms, including a replacement development schedule without a McDonald's

---

[1] SIBV's 2000 notice of default did not cite the development schedule as grounds for termination; instead, it was based exclusively on financial defaults. Cross Pet. ¶ 26.

Clause. See ECF 14-17. On December 19, 2019, SIBV responded with what Subway Russia avers was a counteroffer. See ECF 14-18. SIBV's counteroffer agreed to delete the McDonald's clause and adopt a version of the substitute development schedule that Subway Russia had proposed. See id. Negotiations were slated to continue, but subsequent meetings were canceled because of the COVID-19 outbreak. Cross Pet. ¶ 85. There were other issues at play in ongoing discussions, including the term of any new MFA, and the parties appear to have staked out positions. Cross Pet. ¶ 83; ECF 14-21 at 4. Months passed without a subsequent in-person meeting, though communications continued, and Subway Russia contends that SIBV's December 19, 2019 counteroffer remained open.

While this negotiation was underway, SIBV purported to begin enforcement of the McDonalds and AUV Clauses. On May 6, 2020, SIBV issued a letter declaring Subway Russia in default on the 2015 Second Renewal, citing Subway Russia's failure to comply with these covenants, and stating that SIBV would terminate the MFA in 60 days unless Subway Russia cured the defaults. ECF 14-19. The May 6 letter did not purport to withdraw SIBV's pending counter-offer, however, nor did it discuss the ongoing renewal negotiations. Id. On May 26, 2020, SIBV followed up with a letter placing the 60-day cure period on hold, pending a planned meeting to continue renewal negotiations, reinforcing the inference that the notice of default did not cut off negotiations. ECF 14-20. On July 23, 2020, SIBV sent a letter restating the parties' positions on a new MFA in preparation for a July 27, 2020 conference call to address renewal negotiations. ECF 19-23.

Then, on July 28, 2020, Subway Russia sent SIBV a letter purporting to accept the December 19, 2019 counteroffer, as supplemented by additional SIBV proposals made in other negotiation communications. ECF 14-21; Cross Pet. ¶ 86. Subway Russia claims that this constituted offer and acceptance on a new MFA, since it contends that SIBV's December 19, 2019 counteroffer (as clarified by SIBV's positions on the other remaining points) was never rescinded. Cross Pet. ¶ 86.

SIBV, however, refused to acknowledge contract formation. Eventually, on October 12, 2020, Subway Russia sent SIBV a letter notifying SIBV that Subway Russia had initiated this arbitration challenging, inter alia, "SIBV's denial of the existence of the new [MFA]." ECF 21-1. See also ECF 21-2 (statement of claim alleging, among other things, that Subway Russia's purported acceptance of SIBV's December 19, 2019 counteroffer led to formation of a new MFA separate and apart from the rights vested in Subway Russia by the renewal clause of the 2015 Second Renewal). SIBV responded by issuing a "Notice of Termination" of the 2015 Second Renewal MFA on October 14, 2020. ECF 14-22; Cross Pet. ¶¶ 89-90.

## II.  Procedural Background

These cross-petitions arise from a dispute submitted to arbitration before the American Arbitration Association, captioned Subway Russia Franchising Company, LLC v. Subway International B.V., Case No. 01-20-0015-2294. Pet. ¶ 8. They seek either confirmation or vacatur of the arbitrator's Final Award dated July 26, 2021, ECF 1-3,

6

which incorporated by reference and restated the holdings of a Partial Final Award and Order on Dispositive Motions, dated July 14, 2021. ECF 1-2 ("Partial Final Award"). The award was entered in New York, NY, giving this Court jurisdiction to confirm or vacate the award. See 9 U.S.C. §§ 9, 10(a); ECF 1-2 at 24.

The question before the arbitrator below was whether the MFA was renewed again in 2020. Subway Russia filed the instant arbitration with claims that fall into two groups: Its primary claims contended that the MFA had been renewed as-of-right, pursuant to the provision of the existing MFA permitting unlimited two-year renewals as long as Subway Russia was not in default on the two covenants. The Partial Final Award ultimately rendered decision in SIBV's favor on these claims, after concluding that Subway Russia's defaults on the McDonalds and AUV Clauses left it with no right to renew. See ECF 1-2 at 23.

In the alternative, however, Subway Russia claimed that it had formed a new MFA by accepting a counter-offer SIBV had allegedly left open for months as the onset of the COVID-19 pandemic complicated renewal negotiations.

SIBV counterclaimed for a declaration that Subway Russia was in default on two sales-related covenants and so it had no right to renew.

After holding oral argument on cross-motions for, in effect, partial summary judgment, the arbitrator entered judgment in SIBV's favor on all claims and counterclaims. The basis of the arbitrator's opinion was that Subway Russia's default on the two covenants left it with no right to renew under the existing MFA, and she construed SIBV's

7

October 14, 2020 "Notice of Termination" as a successful refusal to accept Subway Russia's two-year renewal of the MFA as of right, under the renewal provision of the 2015 Second Renewal. ECF 1-2 at 11-13, 23. The arbitrator's opinion noted in a footnote that Subway Russia's dispositive motion had not addressed its offer-acceptance claim, however, since Subway Russia contended that it depended on disputed facts. Id. at 10 n. 14. The arbitrator's decision made no findings of fact or conclusions of law regarding the offer-acceptance claim. Nonetheless, the Partial Final Award's decretal language, repeated in the Final Award, ignored this reservation, granted judgment for SIBV on all claims and counterclaims, and terminated the arbitration. See id. at 23; ECF 1-3.

### III. Analysis

The Court "must grant" a petition to confirm an arbitration award filed within a year after the award issued "unless the award is vacated ... as prescribed in [9 U.S.C. § 10.]" 9 U.S.C. § 9. There is a strong presumption in favor of confirmation, and "courts have an extremely limited role in reviewing such awards." Landau v. Eisenberg, 922 F.3d 495, 498 (2d Cir. 2019).[2] The FAA provides that a district court may vacate an arbitration award upon application of a party if, as relevant here, "the arbitrators exceeded their powers, or so

---

[2] Unless otherwise specified, all internal quotation marks, alterations, omissions, citations, and emphases have been omitted from all sources cited herein.

8

imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4).

Under Section 10(a)(4), the inquiry is guided by the question of "whether the arbitrator had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrator correctly decided that issue." Jock v. Sterling Jewelers Inc., 942 F.3d 617, 622 (2d Cir. 2019). "The Supreme Court has interpreted section 10(a)(4) as requiring that an arbitral decision even arguably construing or applying the contract must stand, regardless of a court's view of its (de)merits." Weiss v. Sallie Mae, Inc., 939 F.3d 105, 109 (2d Cir. 2019) (quoting Oxford Health Plans LLC v. Sutter, 569 U.S. 564, 569 (2013)).

The Second Circuit has also applied a "judicial gloss" to Section 10(a)(4) and held that vacatur is appropriate "where the arbitrator's award is in manifest disregard of the terms of the parties' relevant agreement." Weiss, 939 F.3d at 109. However, a "heightened standard of deference" is owed to the arbitration award when assessing whether there has been a manifest disregard of a commercial contract: "vacatur for manifest disregard of a commercial contract is appropriate only if the arbitral award contradicts an express and unambiguous term of the contract.... If the arbitrator has provided even a barely colorable justification for his or her interpretation of the contract, the award must stand." Westerbeke Corp. v. Daihatsu Motor Co., 304 F.3d 200, 222 (2d Cir. 2002). Even so, "courts will vacate an award where the arbitrator has ruled on issues not presented to him by the parties,

9

or otherwise exceeded the scope of the authority granted to him by the contractual provision providing for arbitration." Matter of Arb. Between Melun Indus., Inc. & Strange, 898 F. Supp. 990, 992 (S.D.N.Y. 1990) (Leval, J.).

Here, the fundamental problem is that the Final Award decided a claim that the underlying opinion had expressly acknowledged was not presented by the parties and was not addressed in the underlying opinion. Specifically, the Partial Final Award, incorporated in the Final Award by reference, see ECF 1-3 at 4, states that "Subway Russia reserve[d] the issue of whether the parties agreed to renew the MFA upon different terms and conditions for determination in further proceedings in this arbitration." ECF 1-2 at 10 n. 14. This statement reflects a colloquy during the oral argument between the arbitrator and counsel for Subway Russia, in which Subway Russia explained that it did not seek judgment as a matter of law on the offer-acceptance claim because it depended on disputed facts. See ECF 19-18 at 8-9.[3]

Moreover, the Partial Final Award made no factual findings or legal conclusions regarding the issues core to the offer-acceptance

---

[3] While Subway Russia reserved the issue for further proceedings, SIBV's dispositive motion did seek judgment on the offer-acceptance claim, arguing inter alia (i) that there was no open counteroffer to accept and (ii) that a contract could not have been formed without a signed writing. See ECF 19-15 at 21-25; ECF 19-17 at 9-12. But as explained, the Partial Final Award addressed none of SIBV's arguments on the offer-acceptance claim. Furthermore, footnote 14 of the Partial Final Award, along with the transcript of the arbitration hearing, reflect the arbitrator's agreement with Subway Russia that the offer-acceptance claim depended on questions of fact that made it inappropriate for resolution as a matter of law.

claim. Asked at oral argument before this Court whether the Partial Final Award made any findings or conclusions regarding offer and acceptance, counsel for SIBV pointed to a portion of the "Summary of Facts" section of the Partial Final Award. See ECF 1-2 at 9. But this merely recounts the parties' correspondence without making any determinations whether, for instance, SIBV's December 19, 2019 letter extended a counteroffer, if that counteroffer was withdrawn by SIBV's notices alleging Subway Russia's defaults on the existing MFA, or if a signed writing was required to consummate a new MFA via this negotiation.

SIBV also argued that Subway Russia's counsel stipulated during argument that if the arbitrator found that Subway Russia had no right to renew under the 2015 Second Renewal MFA, no further evidentiary hearing was necessary on Subway Russia's offer-acceptance claim, and that this stipulation was reflected in a footnote in the arbitrator's opinion. See ECF 19-18 at 12-13. The footnote reads as follows: "To avoid confusion over the scope of the dispositive motions, on June 28, 2021, the Arbitrator directed each party to exchange proposed decretal paragraphs and submit them with comments on the other party's proposal. This Order rules on the dispositive motions as so clarified by the parties' proposals submitted by email on July 1, 2021. During the Hearing, the parties agreed that if it is determined that Subway Russia was properly terminated or had no right to renew, then there would be no need to proceed to the evidentiary hearing on any other claims or counterclaims asserted by either of them. [Transcript Cite]." ECF 1-2

11

at 4 n. 4. But the Court concludes that neither the footnote nor the transcript it references supports the contention that the arbitrator could issue a decision on the offer-acceptance claim without making any distinct findings or conclusions on the key issues germane to that claim. SIBV's reading of footnote 4 in the Partial Final Award is in tension with the Partial Final Award's express acknowledgment that Subway Russia's claim-acceptance claim was reserved for trial. See ECF 1-2 at 10 n. 14. And under the MFA's arbitration clause, either party was entitled to a hearing upon request rather than a decision on the papers, and, as noted, Subway Russia had expressly requested an evidentiary hearing on the offer-acceptance claim.[4] Moreover, the final paragraph before the decretal language spells out the intended implication for the proceedings of the conclusion that Subway Russia lacked a right to renew: "there is no need to address whether the MFA was renewed for an additional two (2) year term on the same terms and conditions in the MFA." Id. at 23. It says nothing about whether a new MFA had been consummated through offer-acceptance outside of the as-of-right renewal provided for in the 2015 Second Renewal MFA. Therefore, even by its own terms, the Partial Final Award contains no

---

[4] The MFA states that "an award should be made on the basis of the files and records unless one of the parties expressly desires an oral hearing." SEE ECF 14-9 ¶ 23(A)(2). Subway Russia stated in its Statement of Claim that it sought an oral hearing, Cross Pet. ¶ 114, and it again requested an evidentiary hearing on the offer-acceptance claim during oral argument on the dispositive motions, see ECF 19-18 at 8-9.

reasoning sufficient to support the full scope of the Final Award's decree.

Insofar as the Final Award rendered a decision on Subway Russia's offer-acceptance claim, the Award must be vacated pursuant to 9 U.S.C. § 10(a)(4). The Partial Final Award, incorporated by reference as the reasoning supporting the Final Award, "has [not] provided even a barely colorable justification for [the arbitrator's] interpretation of the contract." Westerbeke Corp., 304 F.3d at 222. That is because the Partial Final Award provides no findings of fact or conclusions of law that support the decree in SIBV's favor on the question of whether Subway Russia consummated a new MFA via acceptance of the allegedly open offer extended on December 19, 2019. Even under the Federal Arbitration Act's highly deferential standard of review, this does not suffice to resolve Subway Russia's offer-acceptance claim.

## IV. Conclusion

For the reasons set forth above, the Court vacates the Final Award and remands it to the arbitrator for decision on Subway Russia's offer-acceptance claim.

SO ORDERED.

New York, NY
December 8, 2021

_____
JED S. RAKOFF, U.S.D.J.