UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────┐
│ SUBWAY INTERNATIONAL, B.V.,  │
│                             │
│     Petitioner and Cross-   │
│     Respondent,             │
│                             │
│     -v-                     │
│                             │
│ SUBWAY RUSSIA FRANCHISING   │
│ COMPANY, LLC,               │
│                             │
│     Respondent and Cross-   │
│     Petitioner.             │
└─────────────────────────────┘
```

21-cv-7362 (JSR)

MEMORANDUM ORDER

JED S. RAKOFF, U.S.D.J.:

This dispute arises from the 2020 decision of petitioner and cross-respondent Subway International B.V. ("SIBV") not to renew its Master Franchise Agreement ("MFA") respondent and cross-petitioner with Subway Russia Franchising Company, LLC ("Subway Russia"), which has served as the exclusive developer of the Subway restaurant chain in Russia since the 1990s. Subway Russia claims that SIBV wrongfully terminated the MFA, whereas SIBV claims it had the right not to renew based upon Subway Russia's various outstanding defaults. In accordance with the terms of the MFA, the dispute was submitted to arbitration in New York.

In an initial arbitration award (the "First Award"), the arbitrator concluded that Subway Russia did not have a right to automatically renew the MFA because Subway Russia was in default of several provisions of the MFA at the time it sent its renewal notice.

1

However, the First Award did not address Subway Russia's alternative argument that the parties had reached a binding agreement to cure the defaults prior to the expiration of the MFA. After the First Award was made final, the instant case was filed and the parties cross-petitioned for confirmation and vacatur. In a prior Memorandum Order, this Court found that "it [was] necessary to remand the case [to the arbitrator] to decide the remaining claim" of Subway Russia that the arbitrator had not addressed. Dec. 8, 2021 Mem. Order (Dkt. 22) at 13.

Following remand and a seven-day evidentiary hearing, the arbitrator issued a further award in which the arbitrator ruled for SIBV and rejected Subway Russia's offer-acceptance claim. The parties then filed cross-petitions to confirm and vacate the arbitrator's awards. For the reasons set forth below, the Court hereby grants SIBV's petition to confirm and denies Subway Russia's cross-petition to vacate.

## I.  **Factual Background**

Subway Russia has been the exclusive developer of the Subway restaurant chain in Russia since 1993 through a series of three consecutive MFAs signed with SIBV, the fast-food chain's international franchisor. The original MFA provided for a 20-year term, with an unlimited number of two-year renewals provided that (a) Subway Russia provided notice of renewal within a specified period and (b) Subway Russia was not in default of "any provision or obligation contained within [the MFA] at the time [Subway Russia] gives the renewal notice or thereafter." MFA (Dkt. 26-4) ¶ 2.00.

To measure Subway Russia's performance, the 1993 MFA included a "Development Schedule," which required Subway Russia to have a specific number of restaurants open at the end of each year from 1994 to 2001 (e.g., 110 Russian restaurants at the end of 2000). 2d Cross Pet. (Dkt. 28) ¶¶ 21, 33-35. The MFA also had a so-called "McDonald's Clause" which "required Subway Russia to have at least as many restaurants in Russia as the fast-food chain with the most restaurants in Russia." 2d Cross Pet. (Dkt. 28) ¶ 21. A subsequent amendment in 2000 also added a provision requiring a specified minimum average gross sales per restaurant per week ("AUV Clause"), denominated in U.S. dollars. 2d Cross Pet. (Dkt. 28) ¶ 30.

The parties renewed the 1993 MFA on July 25, 2013 ("2013 First Renewal"). The 2013 First Renewal included a mandatory arbitration provision specifying that any dispute arising out of or related to the MFA would be arbitrated pursuant to the rules of the American Arbitration Association ("AAA") and that any hearing would occur in New York. *See* MFA (Dkt. 26-4) § 23A.1. The MFA was renewed again in October 2015 for an additional five-year term that would run through October 19, 2020 ("2015 Second Renewal"). *See* 2d Cross Pet. (Dkt. 28) ¶ 42. As with prior versions of the MFA, the 2015 Second Renewal contained an integration clause, which provided that, as amended, the MFA reflected the parties "entire understanding" and "[t]he Parties may amend the MFA, . . . only in a signed writing." MFA (Dkt. 25-2) § 7.

During both sets of renewal negotiations, Subway Russia was in default of various provisions of the MFA; however both times the parties were able to reach agreements permitting Subway Russia to renew notwithstanding these defaults. 2d Cross Pet. (Dkt. 28) ¶¶ 43, 59. Consistent with the integration clause, once all outstanding issues were resolved a formal, signed version of the amended MFA was prepared and executed in both 2013 and 2015.

Subway Russia was not in compliance with either the McDonald's clause or the AUV clause for most of the history of the MFA. For example, the 1993 MFA called for Subway Russia to have no less than 110 restaurants in Russia by the end of 2000, but at that time Subway Russia had only five. 2d Cross Pet. (Dkt. 28) ¶ 27. Subway Russia was out of compliance with the development schedule requirement and the McDonald's Clause from 1993 to 2012. 2d Cross Pet. (Dkt. 28) ¶ 33. Subway Russia's prospects began to improve in 2007, and from 2010 to the first-half of 2014 Subway Russia was in compliance with the McDonald's Clause and AUV Clause. 2d Cross Pet. (Dkt. 28) ¶¶ 35-36, 46, 55. However, beginning in 2014, various factors, including Russia's war in Crimea, resulting economic sanctions, and the declining value of the Russian ruble, caused Subway Russia to fall out of compliance with both the AUV Clause and McDonald's Clause. *See* 2d Cross Pet. (Dkt. 28) ¶¶ 47-53. Subway Russia would not regain compliance with these provisions from this point until the eventual non-renewal of the agreement in October 2020. 2d Cross Pet. (Dkt. 28) ¶¶ 60-61.

Negotiations between Subway Russia and SIBV for a third renewal of the MFA began in March 2019, over a year before the MFA was set to expire on October 19, 2020. As relevant here, there were three areas the negotiations needed to address: (1) Subway Russia's non-compliance with the McDonald's Clause and its replacement with a new development schedule, (2) Subway Russia's non-compliance with the AUV Clause, and (3) the duration of any new agreement. Subway Russia argues that SIBV made proposals resolving these issues in or before December 2019 and that Subway Russia accepted these proposals in July 2020, thereby creating a binding agreement (or agreements). SIBV argues these were merely preliminary negotiations that contemplated a final preparation of a full MFA before becoming binding, and even if these were offers, they had been withdrawn before the July 2020 acceptance. The negotiations on these three points, and SIBV's conduct that it argues withdrew any offers, are briefly summarized below.

**McDonald's Clause / Development Schedule.** On November 25, 2019, James Gansinger, President of Subway Russia, wrote SIBV offering to set achievable development goals and financial penalties, rather than termination, for failure to achieve those goals. 2d Cross Pet. (Dkt. 28) ¶ 142. On December 19, 2019, SIBV responded with a counter proposal (1) agreeing to delete the McDonald's Clause, (2) proposing a development schedule requiring "[n]et gain of 20 restaurants per year for the next years (2020-2023)," to be renegotiated thereafter, and (3) financial penalties for non-compliance. 2d Cross Pet. (Dkt. 28) ¶ 143. Subway Russia, however, did not purport to accept this proposal

until a July 31, 2020 letter from Gansinger to SIBV. *See* Second Award (Dkt. 25-3) at 14; 2d Cross Pet. (Dkt. 28) ¶ 145.[1]

**AUV Clause.** A key issue with the AUV requirement had been that it was calculated in U.S. dollars, and so was vulnerable to currency market fluctuations. During a March 2019 meeting, Gansinger responded positively to a suggestion by SIBV to change the AUV requirement to be calculated in rubles, although he did not definitively accept this proposal. *See* Second Award (Dkt. 25-3) at 15. On July 22, 2019, SIBV made a written proposal setting out revised AUV figures measured in rubles for the next three years and proposed that the AUV figure would be renegotiated again after that date. *See Id.*; 2d Cross Pet. (Dkt. 28) ¶ 151. Gansinger orally accepted this proposal during a December 2019 meeting, although the only writing even arguably memorializing this acceptance was Gansinger's July 31, 2020 letter referenced above, which did not expressly accept the proposed schedule but simply noted SIBV's willingness to calculate the AUV requirement in rubles. *See See* Second Award (Dkt. 25-3) at 15; July 31, 2020 Ltr. (Dkt. 28-4) at 3.

**Term of New MFA.** In March 2019, SIBV proposed replacing the current renewal schedule with a 10-year term, with an option of one 10-year renewal. Second Award (Dkt. 25-3) at 16. In June 2019, Subway

---

[1]   The letter containing the acceptance is dated July 28, 2020, but was not sent to SIBV until July 31, 2020. *See* May 11, 2022 Hearing Tr. (Dkt. 28-6) at 130, 224. Subway Russia's counsel is admonished for repeatedly making the misleading suggestion in its submissions to this Court that the letter was sent on July 28, 2020. *See, e.g.*, 2d Cross Pet. (Dkt. 28) ¶¶ 42, 74, 96

Russia rejected this proposal and countered that it would be "willing to trade the unlimited number of 2 year contract extensions for a term of 20 years with two consecutive ten year renewals on the same terms and conditions." *Id.* SIBV rejected this counter and, in July 2019, renewed its original proposal of a 10-year term, this time with two 10-year renewals. *Id.*; 2d Cross Pet. (Dkt. 28) ¶ 157.

SIBV raised this proposal again in August 2019, but this time SIBV included the explicit caveat that "this aspect of the agreement is truly bound up in what we ultimately agree to for the above reference contract points [i.e. the development schedule and AUV requirement]." Aug. 23, 2019 Email (Dkt. 28-22). In a November 2019 letter to SIBV, Gansinger indicated the parties had reached "an informal understanding that it would be best to leave the third issue, the term of the new renewal, until we were able to reach agreement on the other open issues [the development schedule and AUV requirement]." Nov. 25, 2019 Ltr. (Dkt. 18-17) at 1. Kirk Crowder, SIBV's legal counsel, confirmed this view in a letter to Subway Russia dated July 23, 2020, in which he acknowledged the disagreement regarding the contractual length term and indicated "any [length] term will necessarily be highly dependent upon and determined by the specificity of the agreed to terms of the above two issues [Unit Growth and Unit AUVs]." July 23, 2020 Ltr. (Dkt. 28-25) at 2. Thereafter, however, in his July 31, 2020 letter to SIBV, Gansinger purported to accept SIBV's August 2019 "offer[] of three ten-year terms." July 31, 2020 Ltr. (Dkt. 28-4) at 4. At no time during the negotiations described above did the parties memorialize

these various understandings into a single, written agreement as had been done during the 2013 First Renewal and 2015 Second Renewal.

**Notice of Default & Interim Negotiations**. After SIBV made the various "offers" in 2019 discussed above, but before Subway Russia purportedly accepted them in July 2020, a management change took place at SIBV. *See* Second Award (Dkt. 25-3) at 18 n.34. The new management was much more concerned with Subway Russia's performance and its apparent lack of any strategy to improve going forward. *Id.* at 18-19. Accordingly, on May 6, 2020, SIBV sent Subway Russia a formal notice of default, indicating Subway Russia was not in compliance with the McDonald's Clause and AUV Clause. *See* May 6, 2020 Ltr. (Dkt. 28-9). The May 6 letter did not expressly purport to withdraw SIBV's pending counter-offer, however, nor did it discuss the ongoing renewal negotiations. *See Id.* On May 18, 2020, Subway Russia responded by asserting various defenses, including that the parties had agreed to delete the McDonald's Clause and that SIBV had changed its policies company-wide to calculate AUV in the local currency. Second Award (Dkt. 25-3) at 19. In response, on May 26, 2020, SIBV stated that it "disagrees" with Subway Russia's "positions" but agreed to pause the 60-day cure window pending further discussions. *Id.* Discussions were scheduled for July 27, 2020.

On July 23, 2020, SIBV sent another Notice of Default to Subway Russia based on the same defaults as declared in the Notice of Default given on May 6, 2020, again stating that failure to cure the defaults would be grounds for termination of the MFA. *See id.* On the same day,

Crowder wrote to Subway Russia in advance of the upcoming discussions, noting that "[t]he parties are still far apart on several key and critical issues," identifying such issues as "unit growth," "unit AUVs," and the term of the renewal. July 23, 2020 Ltr. (Dkt. 28-25). The letter noted that the term provision is "necessarily . . . highly dependent upon" how the other issues were resolved, and suggested "[t]here is no entitlement to a renewal." *Id.* at 2. The letter also suggested that SIBV would have to be satisfied with a "specific business plan to turn around the business, the anticipated structure of [Subway Russia] going forward, and pre-renewal audit" before an amended MFA could be agreed upon. *Id.; see* Second Award (Dkt. 25-3) at 20.

During the subsequent July 27, 2020 meeting, Crowder and Michael Kehoe, President of SIBV's Europe, the Middle East, and Africa region, outlined their many concerns with Subway Russia's performance and future business plan. *Id.* At the end of the meeting, they indicated "SIBV would not enter into any long-term extension of the MFA until there was an understanding as to how Subway Russia was planning to turn the business around, and that the Parties were not in agreement as to a development schedule." *Id.* Crowder sent a follow-up email on July 30, 2020, in which he summarized the results of the meeting, outlined the additional business information SIBV had requested about Subway Russia's operations, suggested SIBV might be interested in a short extension of the MFA "while we explore the status quo and options going forward," and stated that "we are not prepared to simply enter

into a long term extension of the expiring MFA so that you could then sell the agreement to a third party." July 30, 2020 Email (Dkt. 28-28.).

The next day, on July 31, 2020, Subway Russia sent SIBV a letter, purporting to accept SIBV's various outstanding "offers" from 2019 regarding the McDonald's Clause, development schedule, AUV Clause and agreement term. *See* July 31, 2020 Ltr. (Dkt. 28-4). The letter then stated that Subway Russia was exercising its formal right to automatically renew the MFA. *Id.* No reference was made to the various default notices or other intervening communications. SIBV responded on August 6, 2020, by denying the parties had agreed to renew and reiterating SIBV's various other conditions that had been previously discussed. Second Award (Dkt. 25-3) at 21. Subway Russia notified SIBV on October 12, 2020, that it had initiated an arbitration challenging, *inter alia*, "SIBV's denial of the existence of the new [MFA]." Oct. 12, 2020 Ltr. (Dkt. 21-1). In response, SIBV sent Subway Russia a "Notice of Termination" on October 14, 2020, purporting to formally terminate the MFA based on Subway Russia's "uncured defaults." Oct. 14, 2020 Ltr. (Dkt. 28-5).

## II.  **Procedural History**

In accordance with the MFA, the parties submitted their dispute for arbitration before the American Arbitration Association. The question before the arbitrator below was whether the MFA was renewed again in 2020. Subway Russia had offered two theories as to why a renewed MFA existed. First, Subway Russia argued that it had the

automatic right to renew the MFA notwithstanding the various outstanding defaults because, *inter alia*, the defaults were not material and the election of remedies doctrine precluded SIBV from terminating. *See* First Award (Dkt. 25-1) at 11-22. Second, Subway Russia argued that its July 31, 2020 letter constituted acceptance of a binding agreement that cured its various defaults and created a new MFA.

The arbitration, which was held in New York, resulted in an initial final award dated July 14, 2021 (the "First Award"). In it, the arbitrator found that Subway Russia was in default of both the McDonald's Clause and the AUV Clause as of the date of renewal. *See* First Award (Dkt. 25-1) at 9-10. The arbitrator then found neither the election of remedies doctrine nor any materiality requirement applied because SIBV was not affirmatively terminating based upon Subway Russia's breach, but instead invoking its right not to renew in light of Subway Russia's outstanding defaults. *See* First Award (Dkt. 25-1) at 11-22. The arbitrator did not resolve Subway Russia's second argument, as to whether the parties entered into a binding new MFA, which issue was "reserve[d] . . . for determination in further proceedings in th[e] arbitration." First Award (Dkt. 25-1) at 9 n.14. However, no further proceedings were held before the First Award was declared final by the arbitrator.

Following entry of the First Award, the parties then filed timely cross-petitions to affirm and vacate it. This Court ultimately found that the First Award must be partially vacated and remanded. *See* Dec.

8, 2021 Mem. Order (Dkt. 22). Specifically, because the First Award failed to address Subway Russia's "offer-acceptance claim" -- that a new MFA had been created on different terms -- the Court found "a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4); see Dec. 8, 2021 Mem. Order (Dkt. 22) at 8-13. The Court ruled that "[i]nsofar as the Final Award rendered a decision on Subway Russia's offer-acceptance claim, the Award must be vacated," and "remand[ed] [the case] to the arbitrator for decision on Subway Russia's offer-acceptance claim." Dec. 8, 2021 Mem. Order (Dkt. 22) at 13.

The arbitrator construed the scope of the remand as limited to the question of "whether a new Master Franchise Agreement was consummated by reason of Claimant's acceptance of the allegedly open offer extended by Respondent on December 19, 2019 separate and apart from the as-of-right renewal provided for in the renewal clause [of the MFA then in effect]." Second Award (Dkt. 25-3) at 1-2. The arbitrator declined to revisit those matters resolved by the First Award, including the finding that Subway Russia was in default and had no right to automatically renew the MFA. See id. at 2-3. After additional discovery and various pre-trial matters were resolved, the arbitrator conducted seven days of evidentiary hearings that occurred between May 10, 2022, and February 3, 2023. 2d Cross Pet. (Dkt. 28) ¶ 9.

On August 23, 2023, the arbitrator issued a further partial final award, in which she ruled in favor of SIBV and rejected Subway Russia's

offer-acceptance claim on two grounds (the "Second Award"). *See* Second Award (Dkt. 25-3). First, the arbitrator found that the various "offers" made by SIBV in 2019 to resolve specific points of disagreement were not intended to be offers to create binding contracts but were instead preliminary agreements that the parties (or at least SIBV) intended would eventually be incorporated into one final amended MFA. *See id.* at 22-40. Second, the arbitrator found that, even if these were intended to be binding offers, they had been revoked by SIBV prior to ever being accepted. *See id.* at 40-46. The arbitrator acknowledged that SIBV's representatives had never expressly stated SIBV was revoking the offers, but found that use of the word "revoke" was not necessary, because SIBV's intervening conduct unambiguously demonstrated SIBV's belief that no offers remained on the table. *Id.* In particular, the arbitrator cited "the two Default Notices, the last of which was given only one week before the July 31, 2020 notice of extension was sent to SIBV, the opinion of SIBV also conveyed to Subway Russia on July 23, 2020 that the Parties 'were still far apart on several key and critical issues', and the meeting on July 27, 2020 where the SIBV representatives expressed their dissatisfaction with Subway Russia's performance, and sought clarity on its business and succession plan." *Id.* at 42.

This partial award was incorporated into a final award on September 8, 2023, and SIBV timely filed a motion to confirm the award. *See* 2d Pet. to Confirm (Dkt. 26) ¶ 27. Subway Russia then filed three documents in response: (1) a 45-page answer and cross-petition to

vacate the award, (2) an additional 25-page memorandum of law in support of its cross-petition, and (3) a "Motion to Dismiss" SIBV's petition and accompanying 16-page memorandum of law. *See* Dkts. 28-31.

Subway Russia's filings were procedurally improper on numerous levels. The answer and cross-petition were improper because petitions to confirm (or vacate) arbitration awards are treated as "motions in an ongoing proceeding rather than" as pleadings. *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 108 (2d Cir. 2006); *see also* 9 U.S.C. § 6 ("Any application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided."); *Productos Mercantiles E Industriales, S.A. v. Faberge USA, Inc.*, 23 F.3d 41, 46 (2d Cir.1994) (noting that a district court "properly treated [a petition to the court for modification of an arbitration award] as a motion in accordance with the express provisions of the FAA"). The 45-page answer and cross-petition thus is almost double the 25-page limit for motions set forth in this Court's Individual Rule 2(e) and is almost triple the permitted length when combined with the accompanying 25-page memorandum of law. The motion to dismiss is similarly improper because, as noted, a petition to confirm is not a pleading and because Subway Russia failed to obtain permission to file this motion before doing so, as required by Individual Rule 2(b). *See* Nov. 9, 2023 Minute Entry (granting Subway Russia permission to file a "response to plaintiffs' petition and . . . cross-petition").

SIBV filed separate oppositions to Subway Russia's cross-petition to vacate and Subway Russia's motion to dismiss. *See* Dkts. 33, 34. However, SIBV also filed a further "Response" to Subway Russia's answer and cross-petition (ironically, without itself first obtaining permission to do so) in which SIBV argues the Court should disregard everything filed by Subway Russia except its memorandum of law in support of its cross-petition. *See* Dkt. 36.

Notwithstanding Subway Russia's flagrant disregard of this Court's Individual Rules and SIBV's more modest infraction, the Court believes the interests of fairness and judicial economy are best served by considering the merits of Subway Russia's contentions and SIBV's response thereto rather than ordering additional briefing.

## III.  Cross-Petitions to Confirm & Vacate

A district court "must grant" a petition to confirm an arbitration award filed within a year after the award issued "unless the award is vacated" on one of the grounds prescribed by the Federal Arbitration Act ("FAA"). 9 U.S.C. § 9. There is "a strong presumption in favor of enforcing an arbitration award, and an award is presumed valid unless proved otherwise." *Smarter Tools Inc. v. Chongqing SENCI Imp. & Exp. Trade Co.*, 57 F.4th 372, 382 (2d Cir. 2023). "Arbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and

avoiding long and expensive litigation." *Landau v. Eisenberg*, 922 F.3d 495, 498 (2d Cir. 2019).[2]

An award may be vacated where, as relevant here, "there was evident partiality or corruption in the arbitrators" or "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(2), (4). The Second Circuit has placed a "judicial gloss on the[] specific grounds for vacatur of arbitration awards," permitting vacatur where an arbitrator acts in "manifest disregard of the law or of the terms of the arbitration agreement." *Seneca Nation of Indians v. New York*, 988 F.3d 618, 625 (2d Cir. 2021). "An arbitration award manifestly disregards the law only if (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well-defined, explicit, and clearly applicable to the case." *Smarter Tools Inc.*, 57 F.4th at 383.

This judicial gloss recognized by the Second Circuit does not extend to determinations of fact. *See Wallace v. Buttar*, 378 F.3d 182, 193 (2d Cir. 2004) (explaining that "the Second Circuit does not recognize manifest disregard of the evidence as proper ground for vacating an arbitrator's award"). An arbitrator's factual determinations will be upheld so long as "a ground for the

---

[2]   Unless otherwise indicated, all internal quotation marks and citations are omitted from sources cited herein.

arbitrator[s'] decision can be inferred from the facts of the case," or, put differently, "if there is a barely colorable justification for the outcome reached." *Elwell v. Raymond James Fin. Servs., Inc.*, 686 F. Supp. 3d 281, 293 (S.D.N.Y. 2023).

## A. **SIBV's Petition to Confirm Is not Procedurally Improper.**

In its motion to dismiss, Subway Russia argues that SIBV's second petition to confirm is procedurally improper for essentially two reasons: (1) SIBV's petition to confirm the First Award is untimely and (2) the Second Award still failed to resolve all questions submitted to arbitration. As explained below, the Court finds neither argument persuasive.

*First*, Subway Russia claims that any attempt to confirm the First Award is untimely. MTD (Dkt. 31) at 4-5. The FAA requires that a petition to confirm an arbitration award be made "within one year after the award is made." 9 U.S.C. § 9. Subway Russia does not dispute the original petition (Dkt. 1) was filed in a timely manner. Rather, Subway Russia argues that this Court's prior Memorandum Order vacated the First Award in its entirety (i.e. as to both the automatic renewal claim and the offer-acceptance claim). According to Subway Russia, SIBV therefore was required to appeal any portion of the award that was vacated but not remanded within 30 days, which SIBV failed to do.

Subway Russia's position totally misreads the Memorandum Order. The Memorandum Order stated that "[i]nsofar as the [First] Award rendered a decision on Subway Russia's offer-acceptance claim, the Award must be vacated" because it "provide[d] <u>no</u> findings of fact or

conclusions of law that support the decree in SIBV's favor on the question of whether Subway Russia consummated a new MFA via acceptance of the allegedly open offer extended on December 19, 2019." Dec. 8, 2021 Mem. Order (Dkt. 22) at 13. The Memorandum Order explicitly remanded "for decision on Subway Russia's offer-acceptance claim," and not for reconsideration of the case as a whole. *Id.* It was the it was clear from the Memorandum Order that, following remand, SIBV would be given an opportunity to seek confirmation of those portions of the First Award that were not subject to remand, as it now has done.[3]

Subway Russia suggests that vacating the award only as to the offer-acceptance claim "makes no sense because the Original Final Award did not render a decision on the offer and acceptance claim." MTD (Dkt. 31) at 4 n.1. But the First Award, by its terms, did reach a decision on the offer-acceptance claim, stating in its decretal language that "the parties did not renew the MFA beyond its October 19, 2020 expiration date" and "[a]ll other claims, counterclaims, and requests for relief, all affirmative defenses, and all legal arguments not specifically addressed herein are hereby denied." First Award (Dkt. 25-1) at 2. The problem with the First Award was not that it failed to *decide* the offer-acceptance claim, but rather that it failed

---

[3]   While the Court hold that the Memorandum Order was clear on this score, assuming *arguendo* that it is not, the Court hereby corrects any such "oversight or omission." *See* Fed. R. Civ. P. 60(a) ("The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record.").

to offer any basis for its apparent decision resolving that claim. Accordingly, the Court's prior decision was to remand only to more fully consider that issue.

Subway Russia argues that "if the original default determinations [in the First Award] remain intact, as SIBV contends, it would be logically impossible for the Arbitrator to determine that SIBV and Subway Russia had made and accepted offers that removed, cured or waived those very same defaults." MTD (Dkt. 31) at 7. This is plainly incorrect. Even if Subway Russia were in default of the original MFA, as the arbitrator found, it still would be possible for the parties to have entered into a new, amended MFA that cured the defaults. Of course, Subway Russia theoretically is correct that had the arbitrator found the parties had reached an agreement to enter an amended MFA, then the arbitrator's prior finding that Subway Russia was in default would in some sense be overridden. But if no such agreement to cure was created, as the arbitrator in fact found, then the prior determination there was no right to renew would remain in effect. The clear premise of the Court's prior Memorandum Order was that this distinct argument went unaddressed during the first arbitration, and remand was necessary for the arbitrator to consider it.

*Second*, Subway Russia argues that the Court cannot confirm the Second Award because the arbitrator never resolved the question of whether SIBV had a right to terminate the MFA at all. *See* Subway Russia MTD (Dkt. 31) at 8-12. But the arbitrator did resolve this issue in the First Award, albeit indirectly, by finding SIBV did not attempt

to prematurely terminate the MFA. While SIBV did send a document on October 14, 2020 titled "Notice of Termination" -- five days before the agreement was set to expire -- the arbitrator construed this simply as a notice that SIBV did not intend to permit Subway Russia to renew under the MFA's automatic renewal provision because there were various outstanding defaults. *See* First Award (Dkt. 26-1) at 12 (concluding October 14 letter "cannot reasonably be read as anything other than an expression of SIBV's intent not to accept Subway Russia's decision to renew the MFA in light of its existing defaults under the MFA"). Because SIBV did not terminate the MFA, but instead allowed it to expire, the arbitrator found Subway Russia's various defenses -- the election of remedies doctrine and an absence of material breach by Subway Russia -- were inapplicable. *See id.* at 12-21.

Subway Russia seems to suggest it was wrong for the arbitrator to characterize the October 14, 2020 notice as a non-renewal, but Subway Russia cannot dispute that this finding resolved its claim that SIBV wrongfully terminated the MFA. And even assuming (contrary to fact) that the Court agreed with Subway Russia that the arbitrator got this wrong, and the October 14, 2020 letter did attempt to terminate the MFA on that very day and such a termination was wrongful, that would not be grounds for vacatur. Whether or not the agreement was terminated on October 14, it was set to expire five days later on October 19, 2020, in light of Subway Russia's uncured defaults. Therefore, assuming the agreement had been prematurely and wrongfully terminated by SIBV on October 14, the most Subway Russia would have

been entitled to as a remedy was the right to operate under the MFA for five more days, which is precisely what Subway Russia was given by the First Award. In short, the finding that SIBV did not attempt to immediately terminate the MFA on October 14 actually <u>benefited</u> Subway Russia.[4]

## B. <u>The Arbitrator Did Not Exceed Her Authority.</u>

Under Section 10(a)(4) of the FAA, an arbitral award may be vacated "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). Review under Section 10(a)(4) "focuses on whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue." *Smarter Tools Inc.*, 57 F.4th at 382. In light of the "strong presumption in favor of enforcing an arbitration award," this provision has "consistently [been] accorded the narrowest reading[]." *Id.* "[T]he sole question for [the Court] is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got

---

[4]     Subway Russia also argues that the First Award and Second Award are "fundamentally contradictory" because "the [First Award] held that the MFA was not terminated but rather expired by its own terms . . . and the [Second Award] conceded that the MFA was, in fact, terminated." MTD (Dkt. 31) at 12. But the Second Award did not find the MFA "terminated." Subway Russia's argument to the contrary is based on an out-of-context statement from a footnote in the Second Award, off-handedly describing what occurred as a termination in an entirely distinct context. *See* Second Award (Dkt. 25-3) at 21 n.37. Elsewhere, in the Second Award, the arbitrator was very clear that she did not disturb any of the First Award's findings. *See id.* at 2-3.

its meaning right or wrong." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013). "If the arbitrator has provided even a barely colorable justification for his or her interpretation of the contract, the award must stand." *Schwartz v. Merrill Lynch & Co.*, 665 F.3d 444, 452 (2d Cir. 2011).

Subway Russia nonetheless argues the arbitrator exceeded her authority, such that vacatur is warranted, in two ways. *First*, Subway Russia argues the arbitrator went beyond the scope of her authority by ignoring undisputed testimony and the plain language of the agreement when she found Subway Russia had no right to extend the MFA. *See* Mem. ISO 2d Cross-Pet. (Dkt. 29) at 4-7. This argument fails on multiple levels. To begin with, this argument as nothing to do with the arbitrator exceeding her authority by ignoring the plain language of the agreement. The only contract language Subway Russia identifies that the arbitrator purportedly ignored was the MFA's renewal provision, which provides Subway Russia the right to automatically renew the MFA "on the same terms and conditions" if notice is given and Subway Russia is not in default of "any provision or obligation contained within this Agreement at the time [Subway Russia] gives the renewal notice or thereafter." MFA (Dkt. 26-4) ¶ 2.00. The arbitrator did not ignore this provision but, to the contrary, applied it in the First Award and concluded that there was no right to renew because Subway Russia was in default of the McDonald's Clause and AUV Clause.

Subway Russia also claims it was not in default because the parties had reached an agreement to cure, and the arbitrator was wrong

in concluding otherwise. But this argument has nothing to do with the arbitrator exceeding her authority, or ignoring the plain language of some agreement, and is instead simply an attack on the merits of the arbitrator's decision in the Second Award. As noted above, the arbitrator's factual findings on this score will be upheld so long as "there is a barely colorable justification for the outcome reached" that can be decerned from the record. *Elwell*, 2023 WL 5186275, at *8. And as explained in the next Section, Subway Russia comes nowhere near meeting this standard. And, in any case, this does not show that the arbitrator exceeded her authority.

*Second*, Subway Russia argues that the arbitrator exceeded her authority by reaching the issue of whether SIBV had impliedly revoked its offer(s) to resolve Subway Russia's defaults. This was improper, Subway Russia argues, because it was supposedly raised for the first time by the arbitrator and "was never submitted to arbitration." Mem. ISO 2d Cross Pet. (Dkt. 29) at 8. As an initial matter, SIBV raised this argument in its pre-hearing brief before the arbitrator, so the premise that this argument was the arbitrator's invention is simply incorrect. *See* Dkt. 35-2, at 100-101. But even had the arbitrator raised this issue in the first instance, she would not have exceeded her authority in doing so because, as Subway Russia's own authority makes clear, "[a]ny issue that is inextricably tied up with the merits of the underlying dispute may properly be decided by the arbitrator." *Dighello v. Busconi*, 673 F. Supp. 85, 87 (D. Conn. 1987), *aff'd*, 849 F.2d 1467 (2d Cir. 1988). Subway Russia admits that the offer-

acceptance claim was properly within the scope of the arbitration. Whether an offer remained on the table at the time of Subway Russia's acceptance, or instead had been revoked, is "inextricably tied up" with that claim. *Id.* Finally, even if (contrary to fact) it was improper for the arbitrator to reach this question, vacatur would still be inappropriate unless Subway Russia has also shown the arbitrator's alternate holding that there were no offers made in the first instance is also subject to vacatur. *See* Second Award (Dkt. 25-3) at 39-40. As explained below, it has not.

C. **Subway Russia Has Failed to Show Undue Partiality on the Part of the Arbitrator.**

In what appears to be an act of desperation, Subway Russia next argues that the arbitrator demonstrated "evident partiality" in favor of SIBV such that vacatur of the award is warranted. To establish "evident partiality within the meaning of" the FAA, Subway Russia must show that "a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration." *Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 72 (2d Cir. 2012). Unlike the recusal standard for judges, which applies where a judges "impartiality might reasonably be questioned, an arbitrator is disqualified only when a reasonable person, considering all the circumstances, would *have* to conclude that an arbitrator was partial to one side." *Id.* While "[p]roof of actual bias is not required," "a showing of evident partiality may not be based simply on speculation." *Id.* (internal quotation marks omitted). The party

requesting vacatur has the burden of demonstrating partiality "by clear and convincing evidence." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 106 (2d Cir. 2013).

"Typically, partiality is alleged on the grounds of conduct occurring external to the arbitration itself, such as preexisting relationships between the arbitrator and one party or statements and conduct that imply bias." *Ballabon v. Straight Path IP Grp., Inc.*, 2015 WL 6965162, at *7 (S.D.N.Y. Nov. 10, 2015). An arbitrator's substantive rulings "alone almost never" demonstrate partiality. *Liteky v. United States*, 510 U.S. 540, 555 (1994).[5] "Absent objective indicators of bias, an arbitrator's 'consistent[ ] reli[ance] on evidence and reach[ing] conclusions favorable" to one party "does not establish evident partiality." *Ballabon*, 2015 WL 6965162, at *7 (quoting *Bell Aerospace Co. Div. of Textron v. Local 516, Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. (UAW)*, 500 F.2d 921, 923 (2d Cir.1974)); *see Scandinavian,* 668 F.3d at 75 ("We have repeatedly said that adverse rulings alone rarely evidence partiality.").

Notwithstanding the general insufficiency of substantive attacks, almost all of Subway Russia's arguments intended to demonstrate the arbitrator's partiality reduce to the claim that the First and Second

---

[5]     Indeed, the Supreme Court in *Liteky* made this statement in the context of a motion seeking a judge's recusal, which has an even lower recusal standard than that applicable to arbitrators. *See Scandinavian*, 668 F.3d at 72.

Awards are so clearly erroneous that the arbitrator must have been biased. *See* Mem. ISO 2d Cross-Pet. (Dkt. 29) at 14-19, 21-24. That alone is grounds for rejecting the argument. Rather than simply disregard this argument, however, the Court will analyze it under the rubric applicable to such substantive challenges.[6] This requires that Subway Russia show the arbitrator acted in "manifest disregard of the law" or lacked even a "barely colorable justification" for her decision. *Seneca*, 988 F.3d at 626; *see Elwell*, 686 F. Supp. 3d at 293. As explained below, none of the purported deficiencies in the First Award or Second Award come close to meeting this standard.

*First*, Subway Russia claims that the arbitrator's decisions in the First Award demonstrated the arbitrator's bias because she "ignored critical facts" and declined to reach the offer-acceptance claim. Mem. ISO 2d Cross-Pet. (Dkt. 29) at 14-17. Ironically, Subway Russia again focuses on the arbitrator's finding that the October 14, 2020, notice from SIBV to Subway Russia did not, in fact, attempt to terminate the MFA immediately, even though, as explained above, that ruling was actually *beneficial* to Subway Russia, because it meant the MFA expired five days later than it might otherwise have. But even if the

---

[6]    If Subway Russia has failed to demonstrate that vacatur is warranted under this substantive standard of review, then it would make little sense to rely on those very same substantive errors to vacate on the grounds of partiality. Were it otherwise, the intentionally high bar for substantive challenges could be circumvented simply by framing any challenge in terms of partiality. Accordingly, insofar as Subway Russia's substantive arguments fails to satisfy the substantive standard, they cannot, standing alone, satisfy the partiality standard.

arbitrator's finding that there was no attempted termination were somehow adverse to Subway Russia, that still would not demonstrate partiality given that her conclusion was substantively reasonable under the circumstances. *See Landmark Ventures, Inc. v. InSightec, Ltd.,* 63 F. Supp. 3d 343, 354 (S.D.N.Y. 2014) ("A subjective disagreement with a substantive ruling cannot give rise to a finding of partiality."), aff'd, 619 F. App'x 37 (2d Cir. 2015). And while it is true the arbitrator initially did not address Subway Russia's offer-acceptance claim, requiring the Court to partially remand the matter following the First Award, nothing in the record even arguably suggests her decision not to reach that issue was the product of bias.

*Second*, Subway Russia argues that the arbitrator's decision in the Second Award rejecting Subway Russia's offer-acceptance claim demonstrates the arbitrator was biased because, according to Subway Russia, her findings were so clearly erroneous. *See* Mem. ISO 2d Cross-Pet. (Dkt. 29) at 17-19, 21-24. As described above, Subway Russia's offer-acceptance claim was premised upon the notion that, during renewal negotiations in 2019 SIBV had made offers to cure the various defaults that Subway Russia then accepted in July 2020. The offers were made as part of the parties' larger renewal negotiations, were reflected in various piecemeal correspondence, and at no time were reduced to a single, formal agreement. In response, SIBV argued that "[t]he discrete 'offers' and 'acceptances' exchanged in negotiating a third renewal of the MFA were nothing more than negotiations and

discussions and do not evince an intent on its part to be bound by a new amended MFA." Second Award (Dkt. 25-3) at 23.

As the arbitrator correctly recognized, this dispute turns on whether "the parties intend not to be bound until they have executed a formal document embodying their agreement." *Id.* at 24 (quoting *V'Soske v. Barwick*, 404 F.2d 495, 499 (2d Cir. 1968)). The arbitrator recognized that in appropriate circumstances, "New York courts will enforce agreements that were intended to be binding, despite the fact that the parties contemplated memorializing their agreement in formal documentation," but found that, in light of the need to facilitate candid negotiations and avoid trapping parties in unwanted agreements, there is a general presumption against finding a binding agreement from piecemeal documentation. *Id.* at 25-27. The arbitrator then cited the correct list of factors courts consider in determining whether this presumption is overcome: "(a) whether there has been an express reservation of the right not to be bound in the absence of a writing; (b) whether there has been partial performance of the contract; (c) whether the parties have reached agreement on all of the terms of the alleged contract such that 'there was literally nothing left to negotiate or settle[;]' and (d) whether the agreement concerns 'those complex and substantial business matters where requirements that contracts be in writing are the norm rather than the exception.'" *Id.* (quoting *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 75-77 (2d Cir. 1984)). Subway Russia does not offer any meaningful argument that this statement of the law was incorrect.

The arbitrator then applied this law to the facts of the case, and found each factor was either neutral or weighed against a finding that the parties intended to be bound by a preliminary agreement. In support of this finding, the arbitrator relied, *inter alia*, on the fact that (a) the MFA contained an integration clause requiring any amendment be by a written instrument signed by the parties, (b) the proposals were not sufficiently definite because they left open material issues, (c) the MFA is the kind of complex agreement that would not normally be final until a formal contract was executed, and (d) the parties' prior dealings demonstrated there was an expectation that a formal agreement would be prepared before it was binding. *See* Second Award (Dkt. 25-3) at 22-40. Subway Russia offers various arguments why it believes this application of the law to the facts was wrong.

Subway Russia's strongest argument is that in 2013 and 2015 Subway Russia sent it's notice of renewal after the parties had reached agreements to cure then-outstanding defaults but before a full and final agreement had been executed. Because the renewal provision requires Subway Russia not be in default "at the time [Subway Russia] gives the renewal notice," MFA (Dkt. 26-4) ¶ 2.00, those notices of renewal would have been ineffective unless the defaults were cured by the earlier agreements, rather than the later, final agreement. *See* Mem. ISO 2d Cross Pet. (Dkt. 29) at 5-7; Reply ISO 2d Cross Pet. (Dtk. 38) at 3-4. However, Subway Russia omits the fact that in both 2013 and 2015 the full written agreement, extending the MFA and addressing

the defaults, was executed on or before the date the term of the prior MFA was set to expire. *See* Second Award (Dkt. 25-3) at 11, 32. From this, the arbitrator could have reasonably inferred it was only the execution of the full agreement that cured the defaults and extended its term. Furthermore, even if Subway Russia's 2013 and 2015 renewal notices did not comply with the renewal provision, that would not have precluded SIBV from waiving either that non-compliance or the defaults through a subsequent agreement. Given the highly deferential standard of review, the Court cannot say the arbitrator's decision declining to credit this evidence warrants vacatur.

Subway Russia similarly argues that it was wrong for the arbitrator to rely on the parties' past practice of executing final, written MFA's because Subway Russia's witnesses testified that in the past the parties understood preparing the final agreement was merely a formality. *See* Mem. ISO 2d Cross-Pet. (Dkt. 29) at 21-23. Again, the arbitrator was not required to credit Subway Russia's self-serving testimony on this score. Further, that testimony was at least partially contradicted by the fact that, during the process of finalizing the written agreements in 2013 and 2015, the parties continued to negotiate and resolve disputes. *See* Second Award (Dkt. 25-3) at 36-37. Subway Russia suggests that the only reason a formal agreement was not entered into in 2020 was that SIBV refused to prepare one. Mem. ISO 2d Cross-Pet. (Dkt. 29) at 22. The arbitrator expressly refused to credit Subway Russia's testimony on this score, *see* Second Award (Dkt. 25-3) at 32 n.46, and in any event, the very fact SIBV was allegedly refusing to

draft a formal agreement itself constitutes evidence SIBV did not view its preliminary offers as binding.

Subway Russia claims the arbitrator improperly ignored its witnesses -- who were involved in prior negotiations -- and instead credited SIBV's witnesses Kehoe and Crowder, who only became involved in May 2020 and so had no personal knowledge of these matters. *See* Mem. ISO 2d Cross Pet. (Dkt. 29) at 17-19. But the presence or absence of witness testimony regarding the parties' subjective intent in making or accepting these offers is in no way dispositive because, as the arbitrator recognized, contract formation is judged "'not [by] the [parties'] after-the-fact professed subjective intent, but their objective intent manifested by their expressed words and deeds at the time' of contracting." Second Award (Dkt. 25-3) at 24 (quoting *Alessi Equip., Inc. v. Am. Pildriving Equip., Inc.*, 578 F. Supp. 3d 467, 497 (S.D.N.Y. 2022)). The decision not to credit Subway Russia's self-serving testimony and to rely on the various other factors discussed above was well within the arbitrator's discretion.[7]

Subway Russia also faults SIBV for failing to call as witnesses any of SIBV's officers who were working on the deal in 2019 when the

---

[7] Subway Russia cites a snippet of Crowder's testimony where he supposedly "admitted . . . that there was no legal obstacles that prevented Subway Russia from accepting the subject offers." Mem. ISO 2d Cross Pet. (Dkt. 29) at 18. But the cited testimony makes very clear that Crowder was simply addressing a hypothetical world where there was "an offer on the table." *Id.* And in any event, whether there was a "legal obstacle[]" to accepting is a legal question and so Crowder's testimony on this score is, at best, only marginally relevant.

purported offers were made. Subway Russia claims that, because SIBV failed to call these witnesses, the arbitrator should have presumed their testimony would have been harmful to SIBV. *See* Mem. ISO 2d Cross-Pet. (Dkt. 29) at 19. But the only authority Subway Russia cites for this proposition concerns when, as a matter of New York procedure, a party may obtain a missing witness instruction. *See Adam K. v. Iverson*, 110 A.D.3d 168, 176 (N.Y. App. Div. 2013). The arbitrator was under no obligation to apply such procedural or evidentiary rules. And in any event, the missing witness rule simply permits the trier of fact to infer testimony will be unfavorable, but does not require the trier of fact do so. *See id.* at 176-78.

Beyond the particular deficiencies in Subway Russia's various attacks described above, Subway Russia's substantive challenge suffers from the more fundamental deficiency that it does not address the other bases upon which the arbitrator relied to conclude no binding offer existed. Most obviously, Subway Russia does not credibly challenge the arbitrator's alternative finding that SIBV had withdrawn its offer through its course of conduct, which provides an independent basis to confirm the award.[8] As another (dispositive) example, the

---

[8]     In arguing the arbitrator exceeded her authority, Subway Russia suggests that "[t]here could not have been any intent to revoke any offers because at the hearings SIBV stubbornly advanced a legal theory that there really hadn't been any 'offers' made by SIBV." Mem. ISO 2d Cross-Pet. (Dkt. 29) at 10. This characterization of SIBV's position is based entirely on the testimony of SIBV's witnesses; but the fact SIBV witnesses testified that they subjectively believed no offer had been made, and so none was withdrawn, is beside the point, or at least is not conclusive, because contract formation is judged by an objective standard. If, as the arbitrator found, the outward manifestations of

arbitrator found that the agreement to cure Subway Russia's default of the McDonald's Clause and replace it with a development schedule whereby Subway Russia was required to have a "'[n]et gain of 20 restaurants per year for the next three years,' with a development schedule for the following three years to be negotiated in 2023," was too vague to create an enforceable agreement. Second Award (Dkt. 25-3) at 33. The arbitrator observed that how the restaurant counts would be calculated, both for determining the base number of restaurants and for determining what constituted new openings, was far from a trivial matter, particularly in light of partial closures following COVID-19. *Id.* Subway Russia does not argue with this conclusion, which appears entirely reasonable. Having failed to demonstrate these alternative grounds for the arbitrator's ruling were erroneous, Subway Russia has failed to show the Second Award was either substantively wrong or, ultimately, the product of partiality.

*Third*, the only (arguably) non-substantive ground Subway Russia offers to demonstrate the arbitrator's partiality is the fairly conclusory suggestion that the arbitrator denied Subway Russia access to certain discovery. *See* Mem. ISO 2d Cross-Pet. (Dkt. 29) at 19-21.[9]

---

SIBV's witnesses clearly evinced an intent that no offer was on the table, the subjective beliefs of those witnesses do not undermine the objective import of those manifestations. Subway Russia fails even to discuss most of the conduct that the arbitrator found impliedly revoked the offer, let alone demonstrate that the arbitrator lacked a "barely colorable justification" for her finding. *Elwell*, 686 F. Supp. 3d at 293.

[9]     Subway Russia also seems to suggest, albeit in a conclusory manner, that these discovery rulings violated 9 U.S.C. § 10(a)(3) and

In general, arbitrators have "great latitude to determine the procedures governing their proceedings and to restrict or control evidentiary submissions." *Supreme Oil Co. v. Abondolo*, 568 F. Supp. 2d 401, 408 (S.D.N.Y. July 31, 2008). There is no absolute right to discovery in an arbitration, and an arbitrator's "decision not to order the production of certain documents or certain witnesses does not support an inference of bias." *Polin v. Kellwood Co.*, 103 F. Supp. 2d 238, 260 (S.D.N.Y. 2000).

The only discovery ruling Subway Russia identifies concerned a request for documents that SIBV relied on to support its contention that any offer had been withdrawn. *See* Mem. ISO 2d Cross-Pet. (Dkt. 29) at 19-21. While Subway Russia claims that the arbitrator "allow[ed] SIBV to avoid producing a single document" in response to this request, *id.*, in fact SIBV explained that all responsive documents were privileged, had already been produced, or were already in Subway Russia's possession. The Court fails to see how it was improper to not require a further response, let alone how this demonstrates the arbitrator's partiality.

---

(a)(4). *See* Mem. ISO 2d Cross-Pet. (Dkt. 29) at 21. The Court rejects these arguments for similar reasons as those discussed above. With respect to Section 10(a)(3), Subway Russia has not shown any affirmative "misconduct" by the arbitrator that violated "fundamental fairness." *Evan K. Halperin Revocable Living Tr. v. Charles Schwab & Co.*, 2022 WL 4334655, at *5 (S.D.N.Y. Sept. 19, 2022), aff'd, 2023 WL 8253681 (2d Cir. Nov. 29, 2023). Further, Subway Russia identifies no case applying Section 10(a)(4) to procedural rulings, and in any event Subway Russia has not explained how that section was violated.

Subway Russia's initial brief in support of its cross-petition to vacate suggests that "[t]he arbitrator denied Subway Russia access to . . . SIBV's percipient witness [sic]," but offered no further explanation as to the witness or witnesses it was supposedly denied access to. Mem. ISO 2d Cross-Pet. (Dkt. 29) at 20. Subway Russia attempts to expand on this argument in its reply brief, identifying various SIBV witnesses that the arbitrator purportedly refused to order appear. Reply ISO 2d Cross-Pet. (Dkt. 38) at 7-8. Because Subway Russia failed to meaningfully raise this argument in its opening papers, the Court finds it has been waived. And in any event, Subway Russia offers literally no citations in support of this argument – either to the record or to any legal authority -- and so even were the argument not waived, the Court would still be unable to conclude that this demonstrates the arbitrator's partiality.

D. **The AAA Did Not Commit Procedural Error.**

Subway Russia finally argues that the AAA committed procedural error when, after this Court remanded the case after the First Award, the AAA refused to appoint a different arbitrator to consider the remaining matters. *See* Mem. ISO 2d Cross-Pet. (Dkt. 29) at 25. Subway Russia does not identify any AAA rule that was violated through this process, or even any reason to think the AAA's decision to reappoint the same arbitrator was incorrect. Indeed, the Court is doubtful it even has jurisdiction to review such a determination. But regardless, Subway Russia has clearly failed to show any error occurred or that vacatur is warranted on this ground.

## IV.   <u>Conclusion</u>

For the forgoing reasons, SIBV's petition to confirm the First Award and Second Award is hereby granted, and Subway Russia's cross-petition to vacate is hereby denied. The Clerk of the Court is directed to issue final judgment and close the case.

SO ORDERED.

New York, NY
May 28, 2024

JED S. RAKOFF, U.S.D.J.